(77 South. 323)

FLOYD et al. v. PUGH. (6 Div. 441.)

(Supreme Court of Alabama. Nov. 15, 1917. Rehearing Denied Dec. 24, 1917.)

1. PLEADING  &#9758;34(1)—TESTING COMPLAINT —WEAKEST AVERMENT.

Counts of a complaint must be tested by the weakest averment.

2. CONTRACTS  &#9758;332(3) — ACTION FOR BREACH—PLEADING FULFILLMENT OF CONDITION PRECEDENT BY PLAINTIFF.

In an action for breach of contract, the fulfillment of a condition precedent by plaintiff must be averred by him to show the liability of defendants consequent upon such discharge by him of his part of the agreement.

3. CONTRACTS  &#9758;147(3) — CONDITION PRECEDENT—INTENT OF PARTIES.

What is a condition precedent in a contract depends, not upon technical words, but upon the plain intent of the parties, to be deduced from the whole instrument.

4. CONTRACTS  &#9758;221(2) — CONDITION PRECEDENT.

A contract recited that defendants had bought of plaintiff shares of the stock of an insurance company and certain furniture, that defendants had received the stock and furniture and had paid plaintiff in part, the remainder of the price to be paid on terms that plaintiff should make good bond to defendants or another insurance company, in the sum of $2,000, to secure such insurance company from all claims outstanding against the company whose stock had been purchased, and that the sum should be paid in cash, but that, if the bond should not be made, the sum should not be paid plaintiff until he satisfied all claims outstanding against the company whose stock had been purchased, also that if defendants, or either of them or the other insurance company, should advance plaintiff money to secure the claims outstanding against the company whose stock had been purchased, the sum advanced should be deducted from the sum to be paid plaintiff. Held that, by the terms of the contract, a condition precedent which plaintiff was bound to perform was shown.

5. CONTRACTS  &#9758;332(3) — ACTION FOR BREACH—PLEADING PERFORMANCE OF CONDITION PRECEDENT.

The discharge of the burden on plaintiff to aver performance by him of the condition precedent to an accrual of his claim was made by his averment that he had complied with all the provisions of the contract on his part, and

that defendants had failed to comply with the provision to pay plaintiff $3,000.

**6. EVIDENCE ☞471(25) — OPINION — CONCLUSION OF WITNESS.**

The question to plaintiff, whether or not, at any time before suit was filed, he paid or caused to be paid all the claims against an insurance company whose stock he had sold to defendants, did not call for a conclusion of the witness, but for the fact of payment of the outstanding claims of the insurance company.

**7. WITNESSES ☞275(2) — RELEVANCY — CROSS-EXAMINATION.**

Plaintiff having testified as to a loan to him by a trust company, and the certificate of deposit for the proceeds, and the vice president of the trust company having been called as a witness for plaintiff and interrogated as to the transaction that resulted in the loan and the issuance of the certificate of deposit, it was admissible, on cross-examination, for defendants to bring out the whole transaction of the loan to, and the deposit of the proceeds by, plaintiff, with the trust company, the evidence being relevant as tending to show in what capacity plaintiff acted, whether for an insurance company whose stock he had sold, or as an individual in procuring the loan and making the deposit; defendants' contract to pay for the stock requiring plaintiff, as a condition precedent, to indemnify another insurance company against the company whose stock was sold, or to satisfy them.

**8. WITNESSES ☞236(1) — FORM OF QUESTION—IRRELEVANT EVIDENCE.**

A question to a witness, broad enough to elicit irrelevant evidence, was prima facie objectionable.

**9. TRIAL ☞307(1)—DELIBERATION OF JURY —USE OF MEMORANDUM OF CONTRACT.**

Though the court had sustained defendants' objection to the introduction in evidence of an unsigned, purported copy of the contract sued on by plaintiff, no error was committed in permitting the memorandum to be carried by the jury with the other evidence to their room, in their deliberations, it being proper, under plaintiff's testimony, to permit him to refresh his recollection of the contents of the contract by reference to the memorandum.

**10. EVIDENCE ☞354(17)—BOOKS—ENTRIES IN COURSE OF BUSINESS.**

Regular entries made by a party in a book kept for the purpose from data furnished or memoranda kept by an employé to assist his memory in making a report or return thereof, are admissible in evidence, where witnesses testified to the correctness of the account, provided that the employé testifies he knew of the correctness of the items and gave them correctly to the party entering them, and the party entering them testifies that he entered the items as they were given.

Appeal from City Court of Birmingham; H. A. Sharpe, Judge.

Action by John C. Pugh against S. H. Floyd and another for breach of contract. From a judgment for plaintiff, defendants appeal. Affirmed.

The agreement is as follows: Dean & Floyd have heretofore bought of Pugh 497 shares of the capital stock of the Security Life & Accident Insurance Company, at the par value of $4,970, and certain furniture to the sum of $75. Dean & Floyd have received the said stock and furniture in full. Of the sum due Pugh they have paid him $2,045, the remaining $3,000 to be paid upon the following terms: First, he shall make good and satisfactory bond to said Floyd & Dean, or the Interstate Fire Insurance Company as they may be advised in the sum of $2,000, to secure the Interstate Fire Insurance Company from all claims outstanding against the Security Life & Accident Insurance Company, and then the sum shall be paid in cash. Second, if said bond shall not be made, then the sum of money shall not be paid him until and unless he shall satisfy all claims outstanding against the Security Life & Accident Insurance Company. Third, if said Dean & Floyd, or either of them, or the Interstate Fire Insurance Company, shall advance said Pugh in money to secure the claims outstanding against the Security Life & Accident Insurance Company, then the sum of money so advanced shall be deducted from the sum of money to be paid said Pugh. Fourth, the money due said Pugh shall not bear interest, nor shall the money advanced him bear interest.

Nathan Miller and Needham A. Graham, Jr., both of Birmingham, for appellants. Harsh, Harsh & Harsh, of Birmingham, for appellee.

THOMAS, J. The plaintiff's complaint was in three counts. The first and second alleged and claimed for the breach of a dependent agreement, and the third was the common count.

The agreement, which is set out in hæc verba in the first count, shows that the accrual to plaintiff of the $3,000 was dependent: (1) Upon plaintiff's making good and satisfactory bond in the sum of $2,000, to secure the Interstate Fire Insurance Company from all claims outstanding against the Security Life & Accident Insurance Company; or (2) alternatively, if such bond should not be made, then upon plaintiff's satisfying all claims outstanding against said Security Life & Accident Insurance Company. The third important express provision of the agreement was that if the said Dean and Floyd (appellants) should advance to the said Pugh any money wherewith to secure the claims outstanding against the Security Life & Accident Insurance Company, then the sum of money so advanced should be deducted from the sum of money to be paid to the said Pugh (plaintiff-appellee).

In response to defendants' demurrer, which was sustained by the court, plaintiff amended counts 1 and 2, by the addition of the words:

"He satisfied or caused to be satisfied all claims referred to in said contract outstanding against the Security Life & Accident Insurance Company."

Demurrer was reassigned to the counts as amended.

[1, 2] Are the averments of said counts to the effect that neither the defendants nor the

Interstate Fire Insurance Company advanced to plaintiff the money with which to satisfy said claims, or that plaintiff "satisfied or caused to be satisfied all the claims referred to in said contract"? If by failing to make the bond provided, or to satisfy all of said claims, he caused the defendants or the Interstate Fire Insurance Company to advance the money to satisfy said claims, then the sums so advanced must be deducted from the sum of money to be paid to the plaintiff; and if such sums so advanced by defendants or the Interstate Fire Insurance Company exceed the sum due under the contract, there could be no forfeiture of the terms thereof. Under the last alternative of the counts as amended, do the counts show an accrued cause of action? Counts of a complaint must be tested by the weakest averment. Nat. Park Bank v. L. & N. R. R. Co., 74 South. 69 (19).[1] For, if the plaintiff failed to satisfy said claims as he had contracted to do, and by reason of such failure the defendants or the Interstate Fire Insurance Company was caused to satisfy all the claims referred to, in a sum equal to or in excess of $3,000, the plaintiff's claim for that amount could never accrue. The fulfillment of the condition precedent by plaintiff must be averred to show the liability of defendants consequent upon such discharge by him of his part of the agreement. Clinton Min. Co. v. Bradford, 192 Ala. 576, 584, 585, 69 South. 4; Fike v. Stratton, 174 Ala. 541, 558–560, 56 South. 929; Terrell v. Nelson, 177 Ala. 596, 58 South. 989; Bellinger v. State, 92 Ala. 86, 88, 9 South. 399; Flouss & Kennedy v. Eureka Co., 80 Ala. 30; Vincent v. Rogers, 30 Ala. 471.

In Root v. Childs, 68 Minn. 142, 146, 70 N. W. 1087, 1088, the court said:

"Where the obligation of a party to a contract is to pay only upon the happening of a contingency, e. g., the return of an instrument duly recorded, such contingency is in the nature of a condition precedent, and its occurrence must be alleged in the complaint. Wilson v. Clarke, 20 Minn. 318 (367). But if payment is not to be made if a contingency happens during its continuance, e. g., if the party is enjoined from using the article which is the subject-matter of the contract, he is not to pay the purchase price until the injunction is dissolved, the contingency is in the nature of a condition subsequent, and it is not necessary to allege in the complaint the nonhappening or noncontinuance of the contingency. 1 Chit. Pl., 320."

In Fogg v. Sub. Rap. Transit Co., 90 Hun, 274, 276, 35 N. Y. Supp. 954, 955, the court said:

"But by the express phraseology of the provision it is manifest that it was a condition precedent, because it says that this evidence is to be furnished to the party of the first part [the defendant] before the party of the second part [the plaintiffs] 'will demand or shall receive the sums due upon final payment under this agreement.' It would be difficult to see how a condition precedent could be expressed in more apt or appropriate terms. Such provisions in respect to architects' certificates have always been held to be conditions precedent.

[1] 199 Ala. 192.

And if we were in need of authority for the support of this proposition, we have it in the case of Weeks v. O'Brien, 141 N. Y. 199 [36 N. E. 185]."

This is the rule of pleading conditions precedent in complaints, recognized in Clinton Mining Company Case, supra. The rule is formulated by Chief Justice Anderson, in Fike v. Stratton, supra, as follows:

"We think the true test, however, whether it be called an 'exception' or 'proviso,' is whether or not it is a condition precedent to liability, or whether or not it is a condition subsequent going to defeat the plaintiff's action once vested, or if the existence or nonexistence of the condition is essential to a breach of the contract, or merely affords a defense for a failure to comply with same or for a breach of same. If it is a condition precedent, it should be set forth in the declaration, and can be met by a general denial. If it is not a condition precedent to a breach, but merely justifies or excuses a breach in certain instances or for certain causes, it is defensive matter, which need not be negatived or set out in the declaration. Tyson v. Weil, 169 Ala. 558, 53 South. 912 [Ann. Cas. 1912B, 350]. We think the third clause of the contract in question was intended to indemnify the owner of the house by way of liquidated damages against a delay in completing the building, but exempts or relieves the contractor from liability in case the delay was beyond his control. In other words, the proviso was intended as a defense in a certain instance to a right of action vested upon a breach by delay, and is not a condition precedent. 'Every case depends upon the nature of the stipulation or condition, as well as upon the form of it.'"

This line of authority is well grounded on older cases finding expression by Mr. Gould, in his excellent work on Pleading, as follows:

"Whenever, therefore, the right of recovery depends upon a condition precedent, the declaration must aver performance of it (or what is equivalent to performance), to entitle the plaintiff to recover. For in every such case, performance of the condition, or what the law holds equivalent to it, is a constituent and indispensable part of the right of action, or that, without which there can be no cause of action. * * * But in declaring upon a covenant, or upon articles of agreement, an exception (if there be any), in the body of the covenant, etc., must be set out, and the subject-matter of the exception must be excluded from the breach assigned. Tom Jones' Report, 125; Esp. Dig. 300. If then A. covenants to convey to B. a certain farm, except one particular close, B. in an action on the covenant must state the exception, as well as the rest of the covenanting clause, and in assigning the breach must aver that A. has not conveyed the farm, except the one specified close. For the exception enters into the description of the covenant, and the corresponding exception in the assignment of the breach is necessary to show that the breach is within the covenant. * * * But if A. covenants to convey to B. a certain farm, with a separate proviso, that on A.'s performing a certain act, he shall not be bound to convey one particular close, parcel of the farm, B. in declaring on the covenant need not take notice of the proviso. 1 Sir Thomas Raymond's Reports, 65; 1 Levinz's Eng. King's Bench Report, 88; Esp. Dig. 300. For it does not enter into the description of the covenanting clause, on which the action is founded, but is in the nature of a condition subsequent, of which A. may avail himself in his defense, if he has performed the act mentioned in the proviso." Will's Gould on Plead. (6th Ed.) pp. 361, 365.

See, also, Chitty, Cont. (11th Am. Ed.) 1083.

In Roberts v. Britt, 11 House of Lords Cases, 337, 350, the Lord Chancellor said:

"The engagements to give the bonds are not entered into in consideration one of the other; but the fulfillment of his own engagement by each of the parties is a necessary preliminary to his right to recover on the agreement. It is the true intent and object of the agreement that each party should find security within the time prescribed. If this be not done by either party, both may be in effect released from the contract, which may fall to the ground; but neither party can recover for the breach of the covenants in the agreement, unless he has performed this precedent obligation."

Lord Cranworth said:

"I agree with the opinions of the learned judges that the giving of the bond must have been intended to be a condition precedent to any right of action for breach of any of the covenants contained in the indenture. On any other hypothesis the bond would be useless."

[3] What is a condition precedent depends, not upon technical words, but upon the plain intent of the parties, to be deduced from the whole instrument. Roberts v. Britt, supra; Weeks v. O'Brien, 141 N. Y. 199, 202, 36 N. E. 185; Ketchum v. Belding, 58 App. Div. 295, 68 N. Y. Supp. 1099; Root v. Childs, supra; Fogg v. Sub. Rap. Trans. Co., supra.

In Davis v. Badders, 95 Ala. 348, 360, 10 South. 422, 425, the complaint was in code form, and concluded with the averment that the plaintiff had "complied with all the provisions of the contract on their part, and erected said building according to said contract." The contract was set out in one of the counts in hæc verba. The court said:

"But whether, under the provisions of the contract, the obtainment of the architects' certificate is a condition precedent to final payment, we deem it unnecessary to decide. If conceded that it is requisite to entitle plaintiffs to recover the final payment under the counts declaring on the special contract, if the contract has not been performed, and defendant has accepted the house, the production of the certificate is not essential to recovery under the common counts on an implied contract to pay the value of the labor done and materials furnished."

[4, 5] While forms prescribed by statute are declared to have the force of law (Crimm's Adm'r v. Crawford, 29 Ala. 623, 627; Brooklyn Life Ins. Co. v. Bledsoe, 52 Ala. 538, 547; Davis v. Badders, supra), yet, in the instant case, by the terms of the contract in the complaint set out or recited, a condition precedent is shown. The discharge of the burden on the plaintiff to aver performance on his part, of such condition precedent to the accrual of the claim, is met by the averment of the pleader that he has complied with all the provisions of the contract on his part, and that the defendants have failed to comply with the provision thereof to pay plaintiff $3,000.

[6] The assignments of error based on the introduction of evidence are without merit. We may say that the question permitted to plaintiff, "Judge, did you or not, at any time before this suit was filed, pay or cause to be paid all the claims against the Security Life & Accident Insurance Company?" did not call for a conclusion of the witness, but for the fact of payment vel non of the outstanding claims of said insurance company. The case cited by appellant (L. & N. R. R. Co. v. Landers, 135 Ala. 504, 33 South. 482) is not apt, for that the question in that case clearly called for "a conclusion of the witness as to a fact in issue, and which it was the province of the jury alone to determine."

[7, 8] The plaintiff having testified as to the loan by the trust company, and the certificate of deposit for the proceeds thereof, and the witness, Smith, the vice president of the trust company making the loan, being called as a witness for plaintiff and interrogated as to the transaction that resulted in said loan (of $3,000) and the issuance of the certificate of deposit for its proceeds, it was permissible, on cross-examination, for the defendants to bring out the whole transaction—the facts and circumstances connected with it—of the loan to and the deposit by Judge Pugh of the proceeds with the bank. This evidence was relevant as tending to show in what capacity Judge Pugh acted, whether for the Security Company, or as an individual, in procuring the loan and making the deposit. Snell v. Roach, 150 Ala. 469, 43 South. 189; L. & N. R. R. Co. v. Hill, 115 Ala. 334, 22 South. 163; Lanier v. Branch Bank, 18 Ala. 625, 630. This question, not being self-explanatory (Huntsville Co. v. Butner, 194 Ala. 317, 69 South. 960), may have been refused on the ground that counsel failed to point out the material evidence sought to be elicited thereby. That is to say, the question was broad enough to elicit irrelevant evidence, and for this reason was prima facie objectionable.

The testimony of Dr. Nabers was proper, as tending to show the payment of the mortgage by Judge Pugh, through the sale of his property securing the loan; that the borrowed money was not an advancement for which defendants were entitled to a credit on their indebtedness, if they were so indebted.

[9] Though the court had sustained defendants' objection to the introduction in evidence of the unsigned purported copy of the contract, yet no error was committed in permitting that memorandum to be by the jury carried with the other evidence to their room in their deliberations upon the case.

[10] It has been held that a memorandum account which is proven may be admitted in evidence to aid the jurors in remembering the testimony of witnesses who testified to the correctness of such account. Mann Lumber Co. v. Bailey Iron Works, 156 Ala. 598, 47 South. 325. The same is true of regular entries made by a party, in a book kept for that purpose, from data furnished, or memoranda kept by an employé, to assist his memory in making a report or return thereof, provided such employé testifies that he knew of the

correctness of the items and gave them correctly to the party entering them, and the party entering them testifies that he entered the items as they were given. Such regular entries are thus rendered admissible as evidence. Murray & Peppers v. Dickens, 149 Ala. 240, 246, 247, 42 South. 1031.

Plaintiff testified that he entered into a written contract with the defendants in May, 1910, and that the original contract was executed by plaintiff and the defendants; that he had not this original contract among his papers; that he had made diligent search therefor among his papers pertaining to the transaction, and where he kept such documents, and was unable to find it; that he had made demand on the defendants for the original of said contract, and they stated that they did not have, and had never had, an original of said paper executed by the parties as testified to by plaintiff; that they further contended that the paper, nor any paper like it, had ever been executed by them. Plaintiff further testified that he made demand on defendants' counsel for a copy of said contract, and that the paper in question was furnished him by such counsel, in compliance with his demand; that said paper was a copy of the contract executed by plaintiff and defendants. Plaintiff then offered in evidence the paper purporting to be a copy of said contract. The defendants objected to its introduction in the first instance "on the ground that the loss or absence of the original was not properly accounted for." The court, though sustaining the defendants' objection to the introduction of the paper in evidence, stated that plaintiff as a witness might refresh his recollection of its contents by reference thereto, which might be taken as his evidence, and the plaintiff, as a witness, then read to the jury, as a part of his testimony, said paper. Thereafter, on motion of plaintiff, the purported copy of the contract, as proven by the plaintiff as a witness, was permitted, over the objection of the defendants, to be taken by the jury to the jury room as a part of the evidence in the case. The reason for the rule governing such matters is stated by Mr. Justice Strong as follows:

"How far papers, not evidence per se, but proved to have been true statements of fact, at the time they were made, are admissible in connection with the testimony of a witness who made them has been a frequent subject of inquiry, and it has many times been decided that they are to be received. And why should they not be? Quantities and values are retained in the memory with great difficulty. If at the time when an entry of aggregate quantities or values was made, the witness knew it was correct, it is hard to see why it is not at least as reliable as is the memory of the witness." Insurance Co. v. Weides, 14 Wall. (81 U. S.) 375, 20 L. Ed. 894.

The rule on the subject prevailing in this state finds expression in Acklen's Ex'r v. Hickman, 63 Ala. 494, 35 Am. Rep. 54, where Judge Stone declared that if the witness, after examining the memorandum, cannot

201 ALA.—3

testify to an existing knowledge of the fact, independent of the memorandum, be may go further and testify that, at or about the time the memorandum was made, he knew its contents, and knew them to be true; this legalizes and lets in both the testimony of the witness and the memorandum. The two are declared to be equivalent of a present, positive statement of the witness, affirming the truth of the contents of the memorandum. This rule has since been adhered to by our court. Hancock v. Kelly, 81 Ala. 368, 2 South. 281; Jaques v. Horton, 76 Ala. 238; Mims v. Sturdevant, 36 Ala. 636; Insurance Co. v. Adler, 71 Ala. 516; Snodgrass v. Caldwell, 90 Ala. 319, 7 South. 834; Pace v. L. & N. R. R. Co., 166 Ala. 519, 52 South. 52; B. R., L. & P. Co. v. Seaborn, 168 Ala. 658, 53 South. 241; Singleton v. Doe ex dem. Smith, 184 Ala. 199, 63 South. 949; Riley v. Fletcher, 185 Ala. 570, 64 South. 85; Bondurant v. Bank, 7 Ala. 830; Holmes v. Gayle, 1 Ala. 517.

The trial court committed no error, on the predicate laid by the plaintiff as a witness in his own behalf, in permitting the paper to be taken and considered by the jury as a part of the original evidence in the case.

As to whether the mortgage for $3,000 was an asset of the Security Life & Accident Insurance Company, and by the purchase and merger passed to the Interstate Fire Insurance Company, or whether it was merely an accommodation indorsement by Judge Pugh for the Security Life & Accident Insurance Company, was fairly submitted to the jury for decision both in the oral charge and in written charge 1 given at defendants' request. The subsequent mortgage for $2,778.-37, being admittedly for the amount of the accrued claims against the Security Life & Accident Insurance Company that were paid by the Interstate Fire Insurance Company, which sum was thereafter repaid to it by Dr. Nabers for Pugh, there is no other question of fact for decision. This in effect was the interpretation placed on the two mortgages by the Interstate Fire Insurance Company; for its president, as a witness, testified:

"I marked the mortgage canceled. * * * I did not cash that certificate of deposit, but turned it over to Judge Pugh. The company never got any money on that certificate of deposit. On that note and mortgage you understand it got another mortgage for the amount of the claims that had been advanced"

—meaning, by the word, "claims," the accruing liability against the Security Life & Accident Insurance Company, aggregating $2,-778.37. This sum was paid in full to the Interstate Fire Insurance Company by Judge Pugh, or by Nabers for him; and plaintiff's charge number two was properly given by the court.

The oral charge of the court, when considered as a whole, is free from error. It fairly states the question for decision under the pleadings and the evidence.

The several charges requested by defend-

ants and refused by the court, have also been examined, and are found to have been properly refused, as being either abstract or misleading or argumentative, or as having been fully covered by other instructions given by the court.

The judgment of the city court is affirmed. Affirmed.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.